# Case No. 5,405.

## GIDDINGS v. DODD et al.

[1 Dill. 116;[1] 4 N. B. R. 657.]

Circuit Court, E. D. Missouri. 1871.

BANKRUPT ACT—THIRTY-FIFTH SECTION —ILLEGAL PREFERENCES.

1. Creditors who receive an illegal preference are liable to the assignee of the bankrupt; and the intent of the debtor to give, and of the creditor to secure an unauthorized preference, may be shown by circumstances.

[Cited in Strain v. Gourdin, Case No. 13,-521; Alderdice v. State Bank of Virginia, Id. 154.]

2. Facts establishing an illegal preference stated.

This cause comes before the court on a writ of error, to the district court for the Eastern district. Giddings, the bankrupt, in October, 1869, was a country merchant, owing $6,000, and having assets to the amount only of $2,400. In that month he sold his entire stock of goods to one Pendleton, for $1,800, who executed two notes to Giddings therefor, one for $1,373, the other for $392. In January, 1870, Dodd, Brown, & Co., to whom Giddings owed $1,400, on a business note long past due, having failed to obtain payment or security from Giddings, commenced an attachment suit against him on the ground that he had made a fraudulent disposition of his property, and attached the goods sold to Pendleton, and garnished him with respect to the note he had executed to Giddings. The note for $392 had been turned out by Giddings to another creditor. Shortly after the attachment was served, this arrangement was made at the instance of Pendleton, to wit: Pendleton was to procure Giddings to agree to turn out the note for 1.373. which he held against Pendleton, to Dodd, Brown, & Co. Pendleton was entrusted by Giddings,

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

with this note. Defendants agreed to receive it in payment pro tanto and did so, and surrendered it, cancelled, to Pendleton, on receiving in substitution for it his indorsed and secured note for the same amount, and payable at the same time, and the $1,373 was indorsed by the defendants as a credit on their debt against Giddings, and the attachment released. Within four months thereafter, Giddings was forced into bankruptcy, and the plaintiff, as his assignee, brings this action under the 35th section of the bankrupt act, to recover the sum of $1,373, on the ground that it was paid and received as a preference under circumstances which made it void, against the other creditors of the bankrupt. In the district court a jury was waived, and the plaintiff recovered. [Case unreported.] The defendants sue out a writ of error to this court, and complain of the legal propositions which the district court held to be applicable to the case.

Among other things the court (Treat, District Judge) declared the law applicable to the case as follows: "If a debtor is insolvent a payment by him to one of his creditors is, by presumption of law, made with a view to give a preference, and consequently is a fraud upon the provisions of the bankrupt act, inasmuch as the natural and necessary consequence is the payment of one creditor without the means of like payment to the other creditors, whereby the equality among creditors of an insolvent intended to be secured by the act is defeated. Hence, if Giddings was insolvent, and the defendants received payment from him, having at the time reasonable cause to believe him insolvent, the payment was made with a view to give a preference and in fraud of the provisions of the act, and the defendants had reasonable cause to believe such to be the debtor's intent. The same rule of law obtains whether the debtor made the payment under such circumstances with or without pressure from the creditor—willingly or otherwise."

Rankin & Hayden, for plaintiffs in error.

Thomas A. Russell, for defendant in error.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

DILLON, Circuit Judge. The 35th section of the bankrupt act [of 1867 (14 Stat. 534)] makes payments to creditors in violation of its provisions void and gives the assignee the right to recover the amount of the illegal preference. The only questions which can be now reviewed are those arising on the declaration of law above mentioned.

It correctly states the elements which must concur to invalidate a payment made with a view to give a preference. But it is objected by the defendants that the rule of law declared may be abstractly correct, yet it was inapplicable to the circumstances of this case, since the evidence negatived any intent on the part of Giddings to give a preference,

as he was either passive on the matter, or acted only at the instance of Pendleton, and the argument is, that if Giddings had no intent to give a preference then it is not possible that the defendants could have "had reasonable cause to believe that such payment was made (by him) in fraud of the provisions of the bankrupt act."

But it is undeniable that Giddings did consent to and did turn out the note against Pendleton to the defendants. He owed in all about $6,000, and the note he thus gave in payment to the defendants constituted the bulk of his available assets. What could he have meant but to give them a preference? By the payment to them the defendants secured a preference,—the lion's share of his assets, and this, too, when they knew he was insolvent, and had made acts which are acts of bankruptcy grounds for their attachment against him.

If under the circumstances these defendants can retain the advantage they sought to derive from the attachment and through that agency secured, manifestly the purpose of the bankrupt act, which is intended to prevent preferences and put all general creditors upon an equal footing, is subverted. See Linkman v. Wilcox [Case No. 8,374].

Affirmed.